IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Criminal No. 06-0228** |
| | ) | **Electronically Filed** |
| CURT D. KOSOW | ) | |

**MEMORANDUM OPINION REGARDING
DEFENDANT'S COMPETENCY TO FORFEIT HIS RIGHT
TO COUNSEL AND TO STAND TRIAL**

**October 16, 2007**

### I. Introduction

Before the Court are several separate but interrelated issues: defendant's competency to waive counsel and his competency to stand trial and, if found competent, the validity of the deemed waiver of his right to counsel. The legal standards for assessing a defendant's competency to waive counsel and his competency to stand trial are identical. *Godinez v. Moran*, 509 U.S. 389, 391 (1993). The Court finds that defendant is competent to stand trial and to waive or forfeit his right to counsel by his deliberate conduct, and holds that he knowingly, intelligently and deliberately waived his right to counsel by his conduct.

### II. Background

The procedural history of this case is convoluted, owing in large part to defendant's penchant for retaining numerous attorneys and then firing them to retain new counsel (and firing one court appointed counsel as well). Curt D. Kosow, former owner of a nightclub establishment in Pittsburgh, Pennsylvania known as "Bare Elegance," is charged in the indictment with conspiracy to distribute and possess with the intent to distribute less than 500 grams of cocaine, a

Schedule II controlled substance, and quantities of methylenedioxymethamphetamine (MDMA), commonly known as ecstasy, a Schedule I controlled substance, from in or around the Spring of 1998, to in or around March of 2003, five counts of federal income tax evasion, two counts of making false tax returns, and conspiracy to defraud the Internal Revenue Service.

Mr. Kosow has had four retained counsel of record and two court appointed counsel, albeit one of those was appointed for the limited purpose of representing defendant at the competency proceeding. In addition, as the government summarizes in its "Motion to Appoint Counsel to Represent Defendant and for a Colloquy in Accordance with *United States v. Thomas*" (doc. no. 76), defendant had retained five attorneys to represent him at various pre-indictment stages and in plea negotiations. Defendant has never contested the government's representations about the various counsel retained pre-indictment, and he informed the Court appointed psychiatrist that he had gone through numerous counsel pretrial. Defendant's relationships with retained and appointed counsel of record each deteriorated to the point where he fired and/or the attorney withdrew his appearance because of irreconcilable differences.

Defendant's first counsel of record, Paul Lazarus, filed a petition to withdraw (doc. no. 26) on September 11, 2006, indicating that defendant had hired Warner Mariani to represent him going forward. Mr. Mariani thereafter filed a motion to withdraw as counsel (doc. no. 32) on March 6, 2007, on the grounds of irrevocable breakdown in the attorney client relationship. the breakdown manifested itself when defendant and an accomplice appeared in Mr. Mariani's office and removed all of Mr. Mariani's files and records in defendant's case, severing the relationship and terminating Mr. Mariani's representation. The Court granted the motion to withdraw at the status conference on March 6, 2007, and set trial for April 9, 2007, with a preliminary pretrial

conference set for March 19, 2007, later rescheduled for March 21, 2007 to accommodate defendant.

At the March 21st status conference, defendant appeared without an attorney, but advised the Court that he had paid half of a retainer to attorney Robert Goldman of the Rothschild Fox law firm, who would not enter an appearance until the remainder of his fee had been paid, and that attorney Goldman would be entering his appearance on defendant's behalf. The Court advised defendant that since substitute counsel had not yet entered an appearance, the Court would appoint counsel to represent him at trial. Minute entry (doc. no. 38). The following day, the Court appointed attorney Charles Schwartz to represent Mr. Kosow (doc. 39). On March 22, 2007, defendant and Mr. Schwartz appeared for a preliminary pretrial conference at which the parties agreed that a proposed plea agreement defendant was considering would remain in effect until April 9, 2007, and that a tentative date for a change of plea hearing would be set for April 12, 2007.

Defendant decided not to accept the plea agreement, and on April 12, 2007, the Court conducted a status conference. The minute entry (doc. no. 42) from that status conference states:

> Court questions whether defendant (who was not present) filled out financial affidavit - - to which defense counsel responded that defendant has not. Court orders that defendant complete and file CJA financial affidavit by noon on April 18, 2007. Court reiterates that trial date is set for June 4, 2007, and that, if counsel does not qualify for a Court appointed lawyer, defendant must either retain private counsel of his choosing or proceed *pro se*. Court will not allow defendant to continue to hire and fire attorneys in an effort to delay the trial of this matter. Court asks defense counsel to convey this information to his client.
>
> Government states that trial will take 2-3 weeks; Defense counsel orally requests that trial be continued to September 4, 2007 - with representation that it is a firm date. Court requests that defense counsel file a formal written

>motion and the Court, upon receipt of the written motion, will rule upon said motion. . . .

Minute Entry (doc. no. 42) (emphasis added).

On April 30, 2007, Attorney Schwartz filed a motion to withdraw as counsel (doc. no. 47), citing irrevocable breakdown, supported by a caustic and threatening e-mail from defendant to counsel admitting that he (defendant) had "by accident" tape recorded a conversation with Mr. Schwartz. On May 2, 2007, the Court conducted a status conference at which attorney Schwartz motion to withdraw was granted; defendant agreed that Mr. Schwartz could no longer represent him. The minute entry for that conference states:

> Defense counsel presents Petition to Withdraw as Counsel (document no. 47) without further representations; court believes motion is adequate but gives Mr. Schwartz opportunity to add/ speak during hearing if he thinks it is appropriate
>
> defendant states after full and thorough colloquy about trial procedures and rights; court advises defendant that he should retain counsel; court finds def. competent to represent himself, and knowingly and voluntarily waives his right to counsel. court accepts waiver and orally **GRANTS** said Petition to Withdraw; defendant is now representing himself in this matter.
>
> defense counsel places on record that he does not agree by his silence with defendant's statements about counsel's representations, but has ethical obligation not to respond unless ordered by court.
>
> gov. counsel expresses concerns about def's compliance with PTO re weekly visitations with def. counsel; court advises her to file petition setting forth her requested modifications of bond. gov orally moves to revoke bond; court instructs her to file a written motion to revoke bond.
>
> gov. counsel expresses concerns about rule 16 disclosures, which defendant states he possesses; Mr. Schwartz has none of the disclosures.
>
> The Court modifies the 2nd Revised PTO (document no. 45) relating to instructions to file "joint" "unified" filings and "conferring" as stated on the record [paragraphs 3, 6 & 8 of said pretrial order].

Status Conference set for 5/09/2007 at 9:30 AM. Minute entry (doc. no. 48).

At the May 2nd conference, the Court conducted a thorough and searching colloquy with defendant about the consequences of his firing counsel or causing them to withdraw by his behavior. Notes of Testimony, May 2, 2007 (doc. no. 82). Specifically, the Court asked Mr. Kosow, inter alia, the following: whether he understood the consequences of proceeding to trial without a lawyer; whether he understood the possible punishment he faced if convicted; whether he understood the federal rules of evidence and of criminal procedure; whether he had gone to law school or had participated in a criminal trial before; whether he understood that he could no longer delay the trial by firing retained counsel; and whether he understood that trial would take place as scheduled on September 4, 2007, whether or not he obtained new counsel. The Court also strongly advised defendant that he should promptly retain counsel so that new counsel would have four months to prepare for trial, and that if he did not retain counsel or apply for and qualify for court appointed counsel, he would be proceeding to trial pro se. *Id*. More importantly, defendant's *answers* to the Court's questions were entirely responsive, though perhaps at times not very succinct, and indicated that he understood the questions and knew and understood all of the Court's advice and warnings about the importance of counsel and the consequences of his failing to obtain counsel. *Id*.

On May 16, 2007, attorney Goldman entered an appearance strictly "limited to matters relating to the hearing on the Government's Motion to Revoke Pretrial Relief scheduled for Wednesday, May 16, 2007." (doc. no. 56). The Court did not revoke bond on May 16, 2007, but modified the conditions of defendant's pretrial release. Minute entry (doc. no. 61).

5

Between May 16, 2007 and July 19, 2007, Mr. Goldman and his firm worked with defendant in negotiating a plea agreement, and on or about July 17, 2007, notified chambers that defendant intended to plead guilty and execute the plea agreement. This Court therefore scheduled a change of plea hearing for July 20, 2007, but cancelled it because defendant changed his mind. On August 8, 2007, attorneys Goldman and John Gotaskie and their law firm filed a notice (doc. no. 71) that their formal representation of defendant had in fact ended following the May 16, 2007 revocation hearing.

At the previously scheduled final pretrial conference on August 17, 2007, defendant appeared without counsel and indicated to the Court that he believed Goldman and his firm were representing him because he had paid them $70,000, and he objected to proceeding without Goldman. He also indicated that he was taking only two of thirteen prescribed medications and submitted a letter from his treating psychiatrist, Dr. Omar Rieche, M.D., Court Exhibit 3, in which Dr. Rieche stated that defendant is being treated for ADHD, bipolar disorder, anxiety disorder, that he has not been able to completely stabilize, and that he is taking a variety of medications to target these conditions. Dr. Reiche opined in the letter that defendant "is not able to represent himself in any legal process, although he has full capacity to understand the process and give consent."

At this conference, defendant seemed responsive and appeared to understand the nature of the proceedings, but his responses were somewhat slow and erratic, and in combination with Dr. Reiche's letter, the Court became concerned about defendant's mental status for the first time, enough so to contemplate a competency hearing sua sponte. See minute entry (doc. no. 75). Prior to August 17, 2007, neither government counsel nor any of defendant's attorneys ever questioned

defendant's competency, and this Court had no occasion to doubt that he was legally competent to stand trial.

The following day, the government filed its "Motion to Appoint Counsel to Represent Defendant and for a Colloquy in Accordance with *United States v. Thomas*" (doc. no. 76) which expresses the AUSA's concern about defendant's competency and the Court's ruling that defendant had waived counsel by his deliberate conduct in hiring and firing attorneys. On August 22, 2007, this Court appointed attorney R. Damien Schorr for the limited purpose of representing defendant at a competency hearing and to obtain a psychiatric evaluation. This Court's Order stated:

### ORDER OF COURT CANCELLING TRIAL AND SCHEDULING PRELIMINARY HEARING ON COMPETENCY

> This Court previously has ruled, after a full and thorough colloquy, that defendant Curt Kosow knowingly, intelligently and voluntarily waived his right to counsel by his conduct in firing six or more privately retained attorneys and one court appointed counsel. Text Order of May 2, 2007, granting Charles Schwartz's Motion to Withdraw as Attorney (doc. no. 47), to withdraw from representation, and stating that "Defendant is proceeding Pro Se."
>
> At the Final Pretrial Conference on August 17, 2007, the Court placed on the record a letter it received from Dr. Omar Rieche, M.D., who purports to be Kurt Kosow's psychiatrist. In it, Dr. Rieche states that defendant is being treated for ADHD, bipolar disorder, anxiety disorder, has not been able to completely stabilize, is taking a variety of medications to target these conditions, and opines that defendant "is not able to represent himself in any legal process, although he has full capacity to understand the process and give consent." At the conference, defendant seemed to be responsive and understand the nature of the proceedings, but there were also some indications that he may not have fully comprehended all of the questions asked him and that he may not have been able to present a coherent defense.
>
> There is no way of knowing whether defendant was under some psychological impediment or was play acting. Defendant did indicate that his

doctor told him that he was not competent to sign a receipt for the government's Jencks Act materials delivery, and he indicated that he was only taking 2 of 13 prescribed medications. Defendant also insisted that the law firm of Fox Rothschild continued to represent him, even though that law firm had explicitly entered a limited appearance for the purpose of representing defendant at a bond revocation hearing (doc. no. 56), and filed a notice (doc. no. 71) that it had terminated its representation following that hearing.

On August 20, 2007, the government filed a Motion to Appoint Counsel to Represent Defendant and for a Colloquy in Accordance with United States v. Thomas (doc. no. 76). In said motion, the AUSA expresses her concerns that defendant may not be currently competent to stand trial or to waive counsel.

Under all of the circumstances, this Court has sufficient concerns about Mr. Kosow's competency to stand trial and to waive counsel to cancel the trial currently scheduled for September 5, 2007, schedule a preliminary competency hearing pursuant to 18 U.S.C. § 4241, addressed to the issue of obtaining a psychiatric evaluation, and to appoint counsel for Mr. Kosow for the limited purpose of representing defendant at the competency proceedings only.

**AND NOW**, this 22nd day of August, 2007, **IT IS HEREBY ORDERED** that the trial scheduled for September 5, 2007, is cancelled until further notice of Court. The parties should endeavor to file the respective pretrial items as ordered orally and recorded on the minute entry of August 17, 2007, or file a motion requesting that said order be suspended pending disposition of the competency hearing.

IT IS ORDERED that a preliminary competency hearing shall be held **September 6, 2007 at 8:30 AM**. . . .

Order of August 22, 2007 (doc. no. 78).

### III. Competency Proceedings and Hearing

Attorney Schorr filed a Motion for Psychiatric Exam for Purposes of Determining Competency and for an Order Directing Psychiatric Examination (doc. no. 83), requesting the Court to appoint noted forensic psychiatrist, Dr. Robert M. Wettsein, M.D., pursuant to 18 U.S.C. §§ 4241 and 4247, to conduct an evaluation and submit a report, and moved to cancel the

preliminary competency hearing and to schedule a full competency hearing following submission of the report. The Court granted the motion, and scheduled the competency hearing for October 4, 2007.

Dr. Wettsein's Report dated September 30, 2007, was admitted at the competency hearing as Court Exhibit 1. Dr. Wettstein first listed the fifteen sets of documents and interviews upon which he based his evaluation, including the defendant's motion for court appointed psychiatrist, the government's motion to appoint counsel to represent defendant and for a colloquy in accordance with *United States v. Thomas*, motions by attorneys Mariani and Schwartz to withdraw, psychological or psychiatric reports and progress notes of four different mental health professionals, including Dr. Reiche's records of treatment from 2002 through the present, three interviews with defendant in September, 2007, including a self-report Beck Depression Inventory, and interviews with attorney Schwartz and Dr. Reiche.

After detailing the defendant's family, medical, psychological and social history (which included that defendant attended private grade school and high school in Massachusetts, before attending and graduating from Bowdoin College in Maine in 1979) his and presenting problems, and the mental status examinations and results of the Beck test, Dr. Wettstein diagnosed defendant as follows:

      Axis I        1. Atypical bipolar disorder type II, nonpsychotic. 2. Attention deficit hyperactivity disorder.

      Axis II      Narcissitic, and possible borderline/ antisocial, personality traits or disorder.

      Axis III     Contributory medical problems include obesity; type II diabetes; hyperlipidemia; history of left knee replacement.

      Axis IV        Current stressors include this prosecution; financial; family.

After explaining that diagnosis, Dr. Wettstein's report offers detailed explanation and analysis in support of his unequivocal professional opinion, made to a reasonable degree of psychiatric certainty, that defendant is competent to stand trial and to represent himself in these proceedings. In most pertinent part, Dr. Wettstein's report states as follows:

> With regard to his competency to stand trial on the pending charges, the defendant is aware of the charges against him, the roles and responsibilities of the courtroom participants, the possible pleas and penalties in his case, and the general nature of the adversarial system. He has previous experience with criminal and civil litigation. He has met and consulted with many attorneys, some of whom have represented him and others with whom he has consulted informally. . . .
>
> Based upon the available data, it is my psychiatric opinion that the defendant is able to understand the nature and consequences of the proceedings against him. He is a highly intelligent individual with an excellent memory, and his mood disorder symptoms are not so severe that he is thereby unable to understand these proceedings. Similarly, his ADHD does not interfere with his understanding of the nature and consequences of the proceedings. It is also my opinion that the defendant is able to assist properly in his defense though he reportedly has not done so to date. Problems in this area include his marked distrust if not paranoia, with an underlying belief that his attorneys have had a conflict of interest, have been bought off . . . or adversely influenced by the government, were not sufficiently attentive . . . , and have wanted him to plea bargain . . . against his wishes. . . . Again, his mood disorder symptoms and the ADHD symptoms are not so severe or impairing that he would be unable to properly assist counsel, whether private or court-appointed. . . . He is capable of understanding basic courtroom procedure, and appears to have a rational understanding of it, though he has no technical legal knowledge of criminal procedure.
>
> Whether the defendant could represent himself . . . is a somewhat more complex determination even though the legal competency standard is identical to that regarding his competency to stand trial, under *Godinez v. Moran* . . .

Wettstein Report at 12-13.

Dr. Wettstein explained that the complicating factors for the second issue are that

defendant is not trained as an attorney, and he is aware he would be at a disadvantage if he had to represent himself, and that representing himself would place great stress on him which likely would exacerbate his symptoms.  Nevertheless, Dr. Wettstein opined unequivocally that defendant is a highly intelligent, educated, communicative and motivated man who "has the psychiatric ability to rationally represent himself though he would be partially but not completely impaired by virtue of his disorganization, poor focus, emotional volatility, moodiness, and his grandiosity.  There are no manic or psychotic symptoms, and no suicidal or physically self-destructive behavior which would interfere with his self-representation.  He has the ability to make necessary legal decisions in his defense whether he presents it himself or with the assistance of counsel." *Id*. at 13.  Although Dr. Wettstein foresaw that defendant could be poorly focused, rambling, emotional and disorganized, he believed defendant capable of conducting his own defense and that the Court would be able to refocus him and redirect his attention when necessary.  *Id*.

  Dr. Wettstein also opined that defendant was reasonably compliant with his medications, and that there was no other psychiatric treatment or intervention that would make him more coherent or improve his ability to defend himself.  Finally, Dr. Wettstein opined that while defendant's legitimate mood and personality disorders might interfere with his "pyscho-legal decision-making and functioning" to some degree, his "personality psychopatholgy can express itself through interpersonal manipulation.  It is possible that the defendant will attempt to, or already has attempted to, sabotage the criminal proceedings by delaying or obstructing them." *Id.* at 14.

  At the competency hearing, Dr. Wettstein presented his report, was questioned by

11

counsel, and reaffirmed his findings and conclusions, including that defendant possessed the mental capability to manage the trial representing himself if he chose to do so, but that he also had the personality psychopatholgy to sabotage the proceedings. Dr. Wettstein gave his "best estimate" that the stress of going to trial and representing himself would not affect defendant's ability to make appropriate legal decisions.

Mr. Kosow testified that, in his opinion, he would not be able to represent himself at trial, that he had difficulty concentrating and with his thought processes, and he disagreed with Dr. Wettstein's assessment that he was highly intelligent; instead, defendant proffered that he was "stupid." Defendant also indicated that he intended to file motions to suppress evidence, and that he did not intend to go to trial because of those motions. Defendant also indicated that he was, and generally is, compliant with his medication regime.

### IV. Legal Standards.

**A. Waiver of right to counsel**.

As the United States Court of Appeals for the Third Circuit recently instructed:

> It is well established that the Sixth Amendment protects a defendant's right to have counsel for his defense, and his right to refuse counsel and represent himself. *Faretta v. California*, 422 U.S. 806, 814, 820 (1975); *United States v. Stubbs*, 281 F.3d 109, 116 (3d Cir. 2002). A defendant who wishes to represent himself "must be allowed to make that choice, even if it works ultimately to his own detriment." *United States v. Peppers*, 302 F.3d 120, 130 (3d Cir. 2002) (internal quotation marks omitted). Before deciding a defendant's request to proceed pro se, however, "the trial court [bears] the weighty responsibility of conducting a sufficiently penetrating inquiry to satisfy itself that the defendant's waiver of counsel is knowing and understanding as well as voluntary." *Id*. at 130-31; *Stubbs*, 281 F.3d at 118 (same); see also *United States v. Welty*, 674 F.2d 185, 187 (3d Cir. 1982) ("Since the decision to proceed pro se involves a waiver of the defendant's sixth amendment right to counsel, the district court . . . has the responsibility of ensuring that any decision by the defendant to represent himself is intelligently and competently

made.").

> In conducting this inquiry, "[p]erfunctory questioning is not sufficient." *Welty*, 674 F.2d at 187. Rather, a District Court must engage in a "penetrating and comprehensive examination of all the circumstances." *Peppers*, 302 F.3d at 131 (internal quotation marks omitted); *Stubbs*, 281 F.3d at 118 (same); Welty, 674 F.2d at 189 (same). The purpose of the inquiry is to establish that the defendant: (1) has "clearly and unequivocally" asserted his desire to represent himself; (2) "understands the nature of the charges, the range of possible punishments, potential defenses, technical problems that [he] may encounter, and any other facts important to a general understanding of the risks involved"; and (3) is competent to stand trial. *Peppers*, 302 F.3d at 132, 134. To satisfy these criteria, the defendant must be "specific[ally] forewarn[ed] of the risks that foregoing counsel's trained representation entails," *id.* at 133, and he must be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835. . .

*United States v. Jones*, 452 F.3d 223, 228-229 (3d Cir. 2006) (footnotes, parallel and other citations omitted).

Deliberately and expressly choosing to forego the right to counsel is not, of course, the only way in which a defendant will be deemed to have given up his right to counsel, as the Court of Appeals explained in *United States v. Goldberg,* 67 F.3d 1092 (3d Cir. 1995) as follows:

> [W]e note an important distinction between the ideas of "waiver" and "forfeiture," and a hybrid of those two concepts, "waiver by conduct." . . . Because the resolution of that confusion has important implications for the Sixth Amendment, we begin with a discussion of "waiver," "forfeiture," and "waiver by conduct."
>
> 1.
>
> A waiver is an intentional and voluntary relinquishment of a known right. *Johnson* [*v. Zerbst*, 304 U.S. 458, 464 (1938)] . . . The most commonly understood method of "waiving" a constitutional right is by an affirmative, verbal request. Typical of such waivers under the Sixth Amendment are requests to proceed pro se and requests to plead guilty. . . .

2.

At the other end of the spectrum is the concept of "forfeiture." Unlike waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right. Referring to the confusion in the courts over this issue, LaFave and Israel observed that "[t]he term 'forfeiture' is preferred to 'waiver' because 'waiver' in the context of the right to counsel is generally used to refer to an 'intentional relinquishment of a known right'. . . ." LaFave & Israel, [*Criminal Procedure*] supra, § 11.3(c), at 546 n. 4.

In *United States v. McLeod*, 53 F.3d 322 (11th Cir. 1995), defense counsel moved to withdraw based upon the defendant's abusive conduct, threats to sue him, and demands that he engage in unethical conduct. After conducting a hearing at which the defendant was permitted to testify, the district court granted the defense attorney's motion to be relieved. *Id*. at 325-26. Explicitly acknowledging the distinction between "waiver" and "forfeiture," the Court of Appeals for the Eleventh Circuit concluded that "a defendant who is abusive toward his attorney may forfeit his right to counsel." Id. at 325.

\* \* \*

3.

Finally, there is a hybrid situation ("waiver by conduct") that combines elements of waiver and forfeiture. Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed pro se and, thus, as a waiver of the right to counsel. See, e.g., *United States v. Bauer*, 956 F.2d 693 (7th Cir.) (failure to hire counsel where defendant has financial ability to do so constitutes a waiver by conduct), cert. denied , 506 U.S. 882 (1992); *United States v. Allen*, 895 F.2d 1577 (10th Cir. 1990) (district court properly treated defendant's dilatory conduct as request to proceed pro se).

\* \* \*

These are not "waiver" cases in the true sense of the word. In many situations there will be defendants who engage in dilatory conduct but who vehemently object to being forced to proceed pro se. These defendants cannot truly be said to be "waiving" their Sixth Amendment rights because although they are voluntarily engaging in misconduct knowing what they stand to lose, they are not affirmatively requesting to proceed pro se. See *United States v.*

> *Fazzini*, 871 F.2d 635 (7th Cir.) (defendant who was warned about consequences of dilatory conduct insisted he was not waiving his right to counsel), cert. denied, 493 U.S. 982 (1989). Thus, instead of "waiver by conduct," this situation more appropriately might be termed "forfeiture with knowledge."

*Goldberg*, 67 F.3d at 1099-1101 (parallel citations omitted).  See also *United States v. Thomas*, 357 F.3d 357 (3d Cir. 2004) (defendant's conduct in threatening his attorney after irreconcilable breakdowns with two previous attorneys, presented the waiver by conduct/ forfeiture with knowledge hybrid).

The instant case presents the hybrid waiver by conduct or forfeiture with knowledge scenario. The Court has carefully examined the colloquy of May 2, 2007, which was patterned after the *Peppers/ Thomas* guidance of the United States Court of Appeals for the Third Circuit, and finds that defendant was thoroughly, adequately and repeatedly warned about the dangers and risks of proceeding with his dilatory conduct in hiring and firing attorneys, and the consequences of such deliberate conduct.  If defendant is competent to stand trial, he is competent to waive counsel by his deliberate conduct with knowledge that such conduct would result in forfeiting his right to counsel.[1]

**B. Competency.**

As noted, the legal standards for assessing a defendant's competency to waive counsel and his competency to stand trial are the same. *Godinez v. Moran*, 509 U.S. 389, 391 (1993). In *United States v. Renfroe*, 825 F.2d 763, 765-66 (3d Cir. 1987), our Court of Appeals stated:

---

[1] Although the competency hearing and Dr. Wettstein's evaluation focused on defendant's mental status as of August and September, 2007, the Court's discussion of competency applies equally to his competency at previous pretrial proceedings, inasmuch as neither this Court nor any counsel had ever noted any concerns about defendant's competency prior to August, 2007.

>    Fundamental to our adversary system of justice, and perhaps especially of criminal justice, is the prohibition against subjecting to trial a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense. See *Drope v. Missouri*, 420 U.S. 162 (1975). It is clear that the conviction of a legally incompetent defendant and the failure to provide adequate procedures to determine competence would violate a defendant's constitutional right to a fair trial. *Drope*, 420 U.S. at 172.
>
>    In *Dusky v. United States*, 362 U.S. 402 (1960), the Supreme Court defined the test for competence to stand trial as whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceeding against him. *Dusky*, 362 U.S. at 402.

In deciding whether a defendant is competent to stand trial, therefore, the Court must determine if (1) the defendant has the present ability to consult with defense counsel with a reasonable degree of rational understanding, and (2) a rational as well as factual understanding of the proceedings. *United States v. Leggett*, 162 F.3d 237, 242 (3d Cir. 1998) (numerous citations omitted). In *Leggett*, the Court of Appeals held that the district court did not err in failing to sua sponte order a competency hearing before the commencement of the trial or in failing to ensure that Leggett validly waived his right to testify, and that defendant had forfeited his right to counsel at sentencing hearing by physically attacking counsel. On the competency issue, the Court of Appeals' explanation is instructive:

>    "'[I]t does not follow that because a person is mentally ill [that person] is not competent to stand trial.'" *Davis*, 93 F.3d at 1290 (quoting *Newfield v. United States*, 565 F.2d 203, 206 (2d Cir. 1977)); see also [*United States v. Nichols*, 56 F.3d 403, 412 (3d Cir. 1998)] ("It is well-established that some degree of mental illness cannot be equated with incompetence to stand trial.") (internal quotation marks and citation omitted) . . . . If the mental illness does not "deprive the defendant of the ability . . . to understand the proceedings . . . rationally as well as factually," *Nichols*, 56 F.3d at 412 (citation omitted), then the illness is irrelevant for the purposes of determining competency.

* * *

> The facts in [*United States v. Lebron*, 76 F.3d 29, 32 (1st Cir.), cert. denied, 518 U.S. 1011 (1996)] strongly mirror those of the present case. In *Lebron*, the defendant, like Leggett, had a lengthy history of psychiatric disorders, and was diagnosed as a possible schizophrenic. 76 F.3d at 30. At a change-of-plea hearing, the defendant threw a pitcher of water at several case investigators. *Id*. at 31. Neither side moved for a [Rule] 11competency hearing and, pursuant to a plea agreement, the defendant was sentenced. *Id*. On appeal, the defendant argued that the district court should have ordered a competency hearing sua sponte due to his "irrational and outrageous behavior in the courtroom." *Id*. at 32. In affirming the district court's judgment of sentence and rejecting the defendant's argument, the court of appeals for the First Circuit expounded, "Such behavior may be uncontrolled, manipulative, or even theatrical. It is not determinative of competency. Agitated or violent courtroom antics alone do not mandate a finding by the trial court of reasonable cause." *Id*. (citing *United States v. Marshall*, 458 F.2d 446, 450 (2d Cir. 1972)); see also *Nichols*, 56 F.3d at 413 (affirming district court's finding that defendant's unusual behavior- i.e., getting down "on all fours" and putting his head to the floor- was "'all calculated fakery'").

*Leggett*, 162 F.3d at 244.

In the context of waiver of right to counsel, the Court of Appeals for the Third Circuit has summarized the standards as follows:

> In order for a waiver of the right to counsel to be valid, the court must first assure itself that the defendant is competent to waive the right. *Godinez v. Moran*, 509 U.S. 389, ----, 113 S.Ct. 2680, 2685(1993). The competency necessary to waive the right to counsel is identical to the competency necessary to stand trial. Id. at ----, 113 S.Ct. at 2685-86. The defendant must be able to consult with counsel and must have a rational and factual understanding of the proceedings. *United States v. Renfroe*, 825 F.2d 763, 766 (3d Cir. 1987). *Since a competent defendant is entitled to make his or her own decision with respect to representation, it is irrelevant whether the defendant is capable of representing himself or herself effectively*. *Godinez*, 509 U.S. at ----, 113 S.Ct. at 2687.
>
> We decide de novo whether the record demonstrates a knowing and intelligent waiver. *United States v. Velasquez*, 885 F.2d 1076, 1085 (3d Cir. 1989). However, regarding a colloquy between the defendant and the court, the issue of whether the defendant misunderstood what the court said, despite the

> defendant's unambiguous answers indicating comprehension, is *a pure question of fact which depends primarily on the demeanor, conduct, and intonations of the defendant.* We review a finding on this underlying factual issue under a clearly erroneous standard. See *Miller v. Fenton*, 474 U.S. 104, 112 (1985).

*Government of the Virgin Islands v. Charles*, 72 F.3d 401, 404 (3d Cir. 1995) (emphasis added; parallel citations omitted).

In light of the foregoing standards, the Court issues the following findings of fact and conclusions of law.

**Findings of Fact.**

1. After assessing defendant's demeanor and behavior in numerous proceedings, and listening to his responses to this Court's questions, and to questions by counsel, the Court finds defendant to be highly intelligent, responsive and appropriate in his responses.

2. After assessing defendant's demeanor and behavior in numerous proceedings, and listening to his responses to this Court's questions, and to questions by counsel, the Court finds that defendant exaggerates his symptoms in Court on occasion, but for the most part manifests his understanding and comprehension in appropriate responses.

3. After assessing defendant's demeanor and behavior in numerous proceedings, and listening to his responses to this Court's questions, and to questions by counsel, the Court finds that defendant has attempted to manipulate the proceedings by hiring and firming retained and appointed counsel in order to delay or obstruct justice and his trial.

4. After assessing defendant's demeanor and behavior in numerous proceedings, and listening to his responses to this Court's questions, and to questions by counsel, and after careful consideration of Dr. Wettstein's report and testimony regarding his psychiatric evaluation of

defendant, the Court finds that defendant is capable of understanding the nature of these proceedings, the potential punishments he faces, and the legal ramifications and practical consequences of his deliberate conduct in hiring and firing lawyers.

5. The Court finds that defendant is not, as he says, "stupid." To the contrary, defendant is highly educated and intelligent, communicative and well-informed.

6. Defendant has the present ability to consult with defense counsel with a reasonable degree of rational understanding, but he chooses not to do so.

7. Defendant has a rational, as well as factual, understanding of the proceedings, and of this Court's *Peppers/ Thomas* warnings and advice that he retain counsel forthwith.

**V.  Conclusion of Law.**

Based on these findings and the Court's assessment of defendant's credibility, and in light of the foregoing legal standards for competency and waiving right to counsel, the Court finds defendant is competent to waive his right to counsel by conduct (or, to forfeit counsel with knowledge of the consequences), that he is competent to stand trial, and that he knowingly, intelligently and deliberately waived his right to counsel.  While defendant has been diagnosed with and is being treated for bipolar disorder and ADHD, these conditions do not, either alone or in combination with each other and with his personality disorder, render him incapable of understanding the nature of the proceedings or the consequences he faces, nor do they render him unable to assist an attorney in his defense if he chooses to retain and keep one.

Accordingly, the Court will reschedule defendant's trial by separate Order of Court, to commence on October 29, 2007.

**SO ORDERED** this 16th day of September, 2007.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All counsel of record and defendant